UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL S. MUTH,<br><br>                 Plaintiff,<br>v.<br><br>DAVID ANDERSON, ADA COUNTY SHERIFF'S DEPARTMENT; WAYNE ANDERSON, ADA COUNTY SHERIFF'S DEPARTMENT; WESTON BUNNELL, ADA COUNTY SHERIFF'S DEPARTMENT, and OFFICERS JOHN AND/OR JANE DOES 1-10, and THE ADA COUNTY SHERIFF'S DEPARTMENT, ADA COUNTY, IDAHO, and ADA COUNTY, IDAHO,<br><br>                 Defendants. | Case No. 1:11-cv-00461-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to dismiss filed by Ada County, the Ada County Sheriff's Department, and deputies David Anderson, Wayne Anderson, and Weston Bunnell (Dkt. 13). Having reviewed the briefing submitted by the parties, the Court has determined oral argument is unnecessary. For the reasons explained below, the Court will deny the individual defendants' motion to dismiss, but will grant the municipal defendants' motion to dismiss the *Monell* claim.

## BACKGROUND

On January 1, 2011, Michael Muth was in a bar in Kuna and saw a woman being arrested. He overheard the woman complain that the officer should arrest the woman who had hit her. Muth, who was standing about three to four feet away, asked the officer why both women were not being arrested. A second officer instructed Muth to "back off." Muth told this officer that he was "merely asking the other law enforcement officer a question." *Compl.*, Dkt. 1, ¶ 22. Then, "without warning, one of the law enforcement officers physically overpowered Michael, spinning him around and throwing Michael to the ground so that Michael landed on his face." *Id.* ¶ 23. Muth sustained injuries, including a chipped tooth. The officers charged Muth with resisting and/or obstructing an officer under Idaho Code § 18-705, though the charges were later dismissed.

Muth sues under 42 U.S.C. § 1983, alleging violations of his First and Fourth Amendment rights. He also alleges supplemental state law claims. Muth seeks compensatory damages, as well as punitive damages against the individual defendants.

## ANALYSIS

Defendants argue that Muth's § 1983 action should be dismissed because (1) they enjoy qualified immunity from suit; (2) they are not subject to punitive damages; and (3) supplemental jurisdiction of the state law claims would therefore "be improper." *Mot. Memo.*, Dkt. 14, at 2.

1.      **The Legal Standard**

A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). A complaint generally must satisfy "only the minimal notice pleading requirements" of Federal Rule of Civil Procedure 8(a)(2) to avoid a 12(b)(6) dismissal. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2), "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . .'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit Partnership v. Turner Broadcast Sys., Inc.*, 135 F.3d 658, 661 (9th Cir.1998) (citation omitted). The court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.1994). "However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. 544. Finally, the Court may not consider any material beyond the pleadings in ruling on a motion to dismiss under Rule 12(b)(6). *See Branch v. Tunnell*,

14 F.3d 449, 453 (9th Cir. 1994).

1.	**The § 1983 Claims Against the Individual Defendants[1]**

The purpose of 42 U.S.C. § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights. *See Wyatt v. Cole,* 504 U.S. 158, 161 (1992). To state a claim under §1983, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law. *Id.* Police officers carrying out their duties act under color of law.

Muth contends that the individual defendants – Officers David Anderson, Wayne Anderson, and Weston Bunnell – violated his First and Fourth Amendment rights. The officers assert a qualified immunity defense.

### A. The Fourth Amendment Claim

The Court will first address the Fourth Amendment claim. Generally speaking, use of excessive force is contrary to the Fourth Amendment. *See Graham v. Connor,* 490 U.S. 386 (1989). But "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 396.

Excessive use of force claims are evaluated for objective reasonableness based

---

[1] In this section, the Court addresses Muth's claims against the officers to the extent they are sued in their individual capacities. The officers were also sued in their official capacities, but an official-capacity suit is simply an alternative way of suing the entity of which the defendant is an officer. *See, e.g., Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Muth's § 1983 claims against the entity defendants are discussed in Paragraph 3 below.

upon the information the officers had when the conduct occurred. *Saucier v. Katz,* 533 U.S. 194, 207 (2001). Qualified immunity protects officers from the "hazy border between excessive and acceptable force," and ensures that before they are subjected to suit, officers are on notice their conduct is unlawful. *Id.* at 200–01 (citation omitted).

The Supreme Court has established a two-pronged inquiry to resolve all qualified immunity claims. The first inquiry is: Do the facts – viewed in the light most favorable to the plaintiff – show that the officer's conduct violated a constitutional right. Second, if so: Was that right clearly established? *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the case." *Thompson v. Souza,* 111 F.3d 694, 698 (9th Cir. 1997); *see also Saucier*, 533 U.S. at 201.[2]

Defendants' motion focused solely on the second prong. They argue that the officers were not aware that their conduct clearly violated Muth's constitutional rights. Defendants rely mainly on the Idaho Supreme Court's decision in *Rosenberger v. Kootenai Sheriff's Dept.*, 103 P.3d 466 (2004), but that case is distinguishable.

---

[2]This structured two-step analysis, originally required by *Saucier v. Katz*, 533 U.S. 194, is no longer mandatory. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Supreme Court recently held judges should be permitted to exercise their sound discretion in deciding which of the two prongs to address first. *Id.* at 236. Here, the defendants' motion to dismiss focused on the second prong. The Court will therefore confine its analysis to that step for purposes of resolving this motion.

In *Rosenberger*, a civil disturbance broke out in downtown Coeur d'Alene and police officers – some dressed in riot gear – gathered to establish control over an unruly crowd. A video captured the scene as follows:

> The video . . . shows the crowd behind the police and several people directly in front of the police yelling profanities at them. It shows Rosenberger stepping in front of the hostile group of people and approaching the police in an aggressive manner, repeatedly shouting, "I want to know where my wife is!" The video confirms that [Officer] Stemm repeatedly said, "Go or go to jail." After Rosenberger refused to leave, Stemm stepped towards Rosenberger. The video shows Rosenberger pulling his arms back in a defensive manner and stepping back into the crowd, in addition to the takedown and arrest of Rosenberger by the officers.

*Id.* at 468-69.

On these facts, the Court concluded that the police officers were justified in their use of force – which included a "double arm-bar takedown" – because, among other things, they "did not know the full extent of the threat Rosenberger posed." *Id.* at 473. Rosenberger "appeared agitated and approached the officers in an aggressive manner. The officers believed he was under the influence of alcohol." *Id.* The court repeatedly emphasized that the facts drove its decision. For example, it explained that "*given the circumstances of the situation*" a reasonable officer would not clearly realize that using a double arm-bar takedown was an unlawful use of force. *Id.* (emphasis added). Later, it explained that "*[b]ased on the facts,* case law does not provide notice that it was unlawful to use the double arm-bar takedown method of arrest." *Id.* at 474 (emphasis added).

Muth's allegations are factually distinct. He does not allege such a riotous scene, either in terms of what was happening in the bar, or in terms of how he was acting.

Defendants counter that the deputies "were restoring order at a bar on New Year's day" and that Muth not only asked questions but "otherwise interfered with" an arrest. But these facts do not appear in the complaint. Rather, if Muth's allegations are accepted as true and read in his favor, the logical inference is that he did not pose an immediate threat and was not resisting arrest or attempting to escape. Under these circumstances, *Rosenberger* is inapposite and the complaint sufficiently alleges that the officer who took Muth down used more force than was reasonable under the circumstances. The Court will therefore deny defendants' motion to dismiss the Fourth Amendment claim against the individual officers based on their qualified immunity argument.

### B.     The First Amendment Claim

The Court will also deny the individual defendants' motion to dismiss the First Amendment claim. For purposes of resolving this motion, the Court will assume that the officers violated Muth's First Amendment rights, and focus on whether the law was so clearly established that reasonable officers would have known their conduct was unlawful.[3]

At the time Muth was arrested, Supreme Court and Ninth Circuit precedent had clearly established that the First Amendment protects verbal criticism, challenges, and

---

[3] As already noted, in their moving papers, defendants indicated they would focus exclusively on the second prong of the two-prong test. Further, defendants did not meaningfully discuss the First Amendment claim in their motion. On reply, however, defendants began arguing that the first prong was not satisfied; that is, they argued that the officers had not violated Muth's First Amendments rights. In fairness to Muth, the Court will hold the defendants to their original position in resolving this motion.

**MEMORANDUM DECISION AND ORDER - 7**

profanity directed at police officers unless the speech constitutes "fighting words."  *See, e.g, City of Houston v. Hill*, 482 U.S. 451, 455, 465-67 (1987) (striking down as overbroad city ordinance that prohibited "oppos[ing], molest[ing], abus[ing] or interrupt[ing] any policeman in the execution of his duty"); *Norwell v. City of Cincinnati*, 414 U.S. 14, 16 (1973) (per curiam) ("Surely, one is not to be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer."); *Duran v. City of Douglas*, 904 F.2d 1372, 1377-78 (9th Cir. 1990) (police officer's stop of a car from which defendant was making obscene gestures and yelling profanities was unlawful; defendant's actions were protected by First Amendment).

     Given this authority, and viewing the facts in a light most favorable to Muth, a reasonable officer should have known that Muth's verbal challenge was protected by the First Amendment and would not support an arrest.  *Cf. MacKinney v. Nielsen*, 69 F.3d 1002, 1007 (9th Cir. 1995) (police officer who arrested defendant under state statute similar to the one at issue here "should have known that [the plaintiff's] verbal protests could not support an arrest . . . .").  The motion to dismiss Muth's § 1983 action will therefore be denied as it pertains to the First Amendment violation.

### 3. The § 1983 Claim Against the Municipal Defendants

Muth has not, however, alleged a *Monell* claim against the municipal defendants (*i.e.*, Ada County and the officers in their official capacities).[4]

Under the Supreme Court's landmark decision in *Monell v. Department of Social Services,* 436 U.S. 658, 690-91 (1978), municipalities and other local governments are considered "persons" under § 1983 and therefore may be liable for causing a constitutional deprivation. But local governments are responsible only for "'their own illegal acts.' They are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (internal citations omitted).

Section 1983 plaintiffs seeking to impose *Monell* liability on local governments must prove that an "action pursuant to official municipal policy" caused their injury. *Monell*, 436 U.S. at 691; *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010). Further, the policy must be the "moving force" behind plaintiff's alleged constitutional violation. *See Mabe v. San Bernardino County Dep't of Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

Muth's complaint does not articulate any official policy that caused his injury. In responding to the motion to dismiss, Muth speculated that the municipal defendants must

---

[4]The claim against the Ada County Sheriff's Department will also be dismissed. Idaho law permits tort claims against "political subdivisions" which includes cities and counties, but not sheriff's departments. *See* Idaho Code § 6-902; *see generally* Fed. R. Civ. P. 17(b)(3) (state law determines whether parties such as the sheriff's department has the capacity to be sued); *cf. Ward v. Nevada*, 2010 WL 1633461, at *3 (D. Nev. Feb. 26, 2010) (dismissing action against police department and county sheriff's detention facility).

have "some training or policies in place in which they advise their deputies to use a warning such as 'back off' in order to justify further action if the person warned does not leave the area of 'back off'." *Response,* Dkt. 15, at 10. Plaintiff then observes that he has been unable to conduct discovery as to the specifics of any such policy. Muth also argues it is reasonable to infer that deputies are trained to provide a warning prior to a takedown "even where the warning is irrelevant to and not justification for abridgement of Plaintiff's constitutional rights." *Id.* at 10.

The threshold flaw with this argument is that these allegations do not appear in the complaint. The more substantive problem is that, even in his briefing, Muth has not coherently articulated any policy that was the moving force behind his injuries. Thus, to the extent plaintiff asserts he has properly stated a *Monell* claim, the Court will grant the motion to dismiss. Although the Court doubts that Muth can plausibly allege such a claim, it will nonetheless allow him the opportunity to amend.

### 4. Punitive Damages

Lastly, the Court turns to Muth's punitive damages request against the police officers in their individual capacities.[5] Defendants assert that Muth cannot request

---

[5] Defendants justly complain that Muth's complaint seems to seek punitive damages against all defendants. *See, e.g., Compl.,* Dkt. 1, ¶ 5, at p. 11. In responding to this motion, however, Muth clarifies that he seeks punitive damages only as to the individual defendants. *See Response,* Dkt. 15, at 15 ("Plaintiffs' claims for punitive damages are proper against the individual Deputy defendants . . . .").

punitive damages against the officers personally. Defendants' argument is pieced together from a state indemnification statute – Idaho Code § 6-903 – and the Supreme Court's decision in *City of Newport v. Facts Concerts, Inc.*, 453 U.S. 247 (1981).

*City of Newport* held that cities are immune from punitive damages in § 1983 actions. *Id.* at 271. The Court reasoned that a city employee's malice "should not be attributed to the taxpaying-citizens of the community" and, further, that an award against the city would not effectively deter individuals from committing future violations. *Id.* at 261. The Court believed that a more effective deterrent would be to allow "juries and courts to assess punitive damages in appropriate circumstances against the offending official, based on his personal financial resources, . . ." *Id.* at 269.

So under *City of Newport* it is beyond dispute that municipalities are immune from punitive damages awards in § 1983 cases. But like many other states, Idaho has an indemnification statute requiring municipal defendants to pay for judgments awarded against individual employees who act in the course and scope of their employment. *See* Idaho Code § 6-903(2)(i). The statute further provides that the municipality may "refuse a defense or disavow and refuse to pay any judgment" for an employee who acted with malice or criminal intent. Idaho Code § 6-903(3).

Reading *City of Newport* together with the Idaho indemnification statute, defendants conclude that Muth should not be able to seek punitive damages from the police officers in their individual capacities because the municipality will end up footing

the bill anyway.

Defendants do not cite any authority that has adopted this logic, and they overlook the fact that *City of Newport* implicitly approved indemnification statutes similar to Idaho's. *See* 453 U.S. at 270 n.30 ("A number of state statutes requiring municipal corporations to indemnify their employees . . . specifically exclude indemnification for malicious or willful conduct by the employees."). Nor do defendants direct the Court to case authority undermining their argument. For example, in *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir. 1984), *overruled on other grounds by Russ v. Watts,* 414 F.3d 783 (7th Cir. 2005) (en banc)), the Seventh Circuit held that a municipality could be obligated to pay a punitive damages award against an individual if state law required the municipality to indemnify the individual defendant. *Id.* at 1271. The court observed that to "disallow punitive damages in a Section 1983 action solely on the basis of restrictive state law would seriously hamper the deterrence effect of Section 1983." *Id.; cf. also McFadden v. Sanchez,* 710 F.2d 907 (2d Cir. 1983) (where estate brought § 1983 action for shooting death by police officer, New York law which would deny punitive damages is inconsistent with § 1983).

Additionally, the Ninth Circuit rejected a related argument in *Cornwell v. City of Riverside,* 896 F.2d 398 (9th Cir. 1990). In *Cornwell,* the plaintiff brought a successful § 1983 action against five police officers employed by the City of Riverside. The jury awarded general and punitive damages. The City of Riverside offered to pay the punitive

damages, but Cornwell refused to accept; he believed the officers should be forced to pay the punitive damages themselves. *Id.* at 399.

The Ninth Circuit was not persuaded. It clarified that "*City of Newport* does not establish a federal policy prohibiting a city from paying punitive damages when the city finds its employees to have acted without malice and the city deems it in its own best interest to pay." *Id.* The *Cornwell* Court also observed that "[w]hen Congress has wanted to prohibit payment of damages on behalf of one person by another it has known how to do so with express language." *Id.* (citing Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(3) (corporation may not pay fine of its officers penalized under the act)).

Although *Cornwell* faced a different question, its logic dictates the result here. Muth can seek punitive damages against the officers in their individual capacities, notwithstanding that the municipal defendants are obligated to provide a defense and pay any judgment if the individuals acted in the course and scope of their employment, without malice or criminal intent.[6]

---

[6]The Court rejects defendants' argument that Idaho Code § 6-918 prevents Muth from seeking punitive damages against the officers in their individual capacities on the § 1983 claim. *See McCabe v. Craven*, 2007 WL 1229095, at *7 (Idaho Ct. App. Apr. 19, 2007), *reversed on other grounds*, 188 P.3d 896 (Idaho 2008) (citing *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 306 n.9 (1986)).

Given the above rulings, the defendants' contention that this Court should not retain supplemental jurisdiction of Muth's state law claims is moot.[7]

## ORDER

**IT IS ORDERED** that Defendants' Motion to Dismiss (Dkt. 13) is **GRANTED in part** and **DENIED in part.**  Defendants' motion to dismiss Muth's § 1983 claims against the entity defendants, and against the officers in their official capacities, is GRANTED.  These claims (identified as Counts I through III of the complaint) are dismissed as to these defendants without prejudice.  Plaintiff shall file any amended complaint within 30 days of this Order.  The motion is DENIED in all other respects.

DATED:  **June 29, 2012**

Honorable Edward J. Lodge
U. S. District Judge

---

[7]Defendants have not challenged the sufficiency of the state law claims.  The Court observes, however, that the specific tort Muth alleges under the Idaho Tort Claims Act is not clear.  *See Compl.,* Dkt. 1 (Count IV contains the caption "Idaho Tort Claims Act Pursuant to I.C. § 6-901 and all Subsequent Sections  (Reckless, Willful, and Wanton Conduct")).  Additionally, Muth has not alleged compliance with Idaho Code § 6-610, which requires filing a bond before suing a law enforcement officer for actions "aris[ing] out of, or in the course of performance of his duty . . . ."